John F. Lomax (#20224)
Samantha E. Cote
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: jlomax@swlaw.com
        scote@swlaw.com
Attorneys for Mayo Clinic

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dr. Shina R. Zehnder, M.D., a married woman,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Mayo Clinic, a foreign nonprofit corporation dba Mayo Clinic School of Graduate Medical Education,<br><br>　　　　　Defendant. | No. 2:23-cv-00355-DJH<br><br>**MAYO CLINIC'S ANSWER**<br><br>(Jury Trial Demanded) |

Mayo Clinic for its Answer to Dr. Zehnder's Complaint hereby admits, denies, and alleges as follows:

**INTRODUCTION**

1. Answering paragraph 1, Mayo Clinic admits that it is a non-profit corporation and that Dr. Zehnder alleges that Mayo Clinic has violated Title I of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Arizona Civil Rights Act, but Mayo Clinic denies that it has violated these laws and denies any remaining allegations in paragraph 1.

**PARTIES, JURISDICTION AND VENUE**

2. Answering the first sentence in paragraph 2, upon information and belief,

4877-5061-9733.3

1. Mayo Clinic admits. Answering the second sentence in paragraph 2, Mayo Clinic admits.

3. Answering paragraph 3, Mayo Clinic admits.

4. Answering paragraph 4, Mayo Clinic admits that, through one of its affiliated non-profit corporations, Mayo Clinic Arizona, Dr. Zehnder is currently employed as a resident and that Mayo Clinic Arizona owns and operates a hospital in Phoenix, Arizona. Mayo Clinic denies the remaining allegations in paragraph 3.

5. Answering paragraph 5, Mayo Clinic admits that it and Mayo Clinic Arizona participate in Medicare and that certain Mayo Clinic-affiliated organizations may receive certain governmental grants, but in light of the lack of specificity of the allegations, Mayo Clinic denies the remaining allegations in this paragraph including the broad and general allegation that it "receives funding through grants from the Federal government.".

6. Answering paragraph 6, Mayo Clinic admits that in this lawsuit, Dr. Zehnder alleges Mayo Clinic violated Title I of the ADA and Section 504 of the Rehabilitation Act, but Mayo Clinic denies that it violated those laws.

7. Answering paragraph 7, Mayo Clinic admits.

8. Answering paragraph 8, Mayo Clinic admits.

9. Answering paragraph 9, Mayo Clinic admits venue is proper in this Court but denies the allegations or implications that its events or omissions gave rise to a valid claim.

## FACTUAL BACKGROUND

10. Answering paragraph 10, Mayo Clinic lacks knowledge and information sufficient to form a belief about the truth of whether Dr. Zehnder has been diagnosed with each of the conditions listed in paragraph 10, whether and, if so, how those conditions impair her abilities, and whether those conditions qualify as disabilities under the laws mentioned in the Complaint. As such, Mayo Clinic denies the allegations in this paragraph.

11. Answering paragraph 11, Mayo Clinic admits that Dr. Zehnder reported and provided transcripts (i) from Arizona State University that she graduated with two Bachelor's degrees; and (ii) from the University of Rochester School of Medicine and Dentistry with a Doctor of Medicine or M.D. degree. Mayo Clinic lacks knowledge and

information sufficient to form a belief about the remaining allegations of this paragraph including whether Dr. Zehnder has been diagnosed with each of the conditions listed in paragraph 10, whether and, if so, how those conditions impair her abilities, and whether those conditions qualify as disabilities under the laws mentioned in the Complaint. As such, Mayo Clinic denies the remaining allegations in this paragraph.

12. Answering paragraph 12, Mayo Clinic lacks knowledge and information sufficient to form a belief about whether Dr. Zehnder has been diagnosed with each of the conditions listed in paragraph 10 and in paragraph 12, whether and, if so, how those conditions impair her abilities, and whether those conditions qualify as disabilities under the laws mentioned in the Complaint. As such, Mayo Clinic denies the allegations in this paragraph.

13. Answering paragraph 13, Mayo Clinic admits Dr. Zehnder participated in an internship at Riverside Health System, that Dr. Zehnder has submitted documentation from Deborah P. Healy, M.D. regarding the latter's treatment and care of Dr. Zehnder, and that Dr. Healy is affiliated with the University of Rochester Medical Center. Mayo Clinic lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations of this paragraph. As such, Mayo Clinic denies the remaining allegations in this paragraph.

14. Answering paragraph 14, Mayo Clinic admits that Dr. Zehnder submitted documentation from Dr. Healy about Dr. Zehnder's conditions and that documentation speaks for itself. Mayo Clinic lacks knowledge and information sufficient to form a belief about what Dr. Healy observed, what Dr. Zehnder shared with her, and the conclusions Dr. Healy reached. As such, Mayo Clinic denies the remaining allegations in this paragraph.

15. Answering paragraph 15, Mayo Clinic admits that Dr. Zehnder submitted documentation from Dr. Healy about Dr. Zehnder's conditions and that documentation speaks for itself. Mayo Clinic lacks knowledge and information sufficient to form a belief about what Dr. Healy observed, what Dr. Zehnder shared with her, and the conclusions Dr. Healy reached. As such, Mayo Clinic denies the remaining allegations in this paragraph.

16. Answering paragraph 16, without reference to Dr. Zehnder's conditions, Mayo Clinic admits that refractory insomnia may be diagnosed if recognized treatment options for insomnia are not successful.

17. Answering paragraph 17, Mayo Clinic lacks knowledge and information sufficient to form a belief as to the truth of the allegations, and therefore denies the same.

18. Answering paragraph 18, Mayo Clinic lacks knowledge and information sufficient to form a belief as to the truth of the allegations, and therefore denies the same.

19. Answering paragraph 19, without reference to Dr. Zehnder's conditions, Mayo Clinic admits that Postural Orthostatic Tachycardia Syndrome (POTS) is a medical condition that among other things is characterized by symptoms of orthostatic intolerance and can lead to dizziness when a person transitions from laying down to standing up. Mayo Clinic denies the remaining allegations of this paragraph.

20. Answering paragraph 20, Mayo Clinic lacks knowledge and information sufficient to form a belief as to the truth of the allegations, and therefore denies the same.

21. Answering paragraph 21, Mayo Clinic admits that Dr. Zehnder submitted documentation from Dr. Healy about Dr. Zehnder's conditions and that documentation speaks for itself. Mayo Clinic lacks knowledge and information sufficient to form a belief about what Dr. Healy observed, what Dr. Zehnder shared with her, and the conclusions Dr. Healy reached. As such, Mayo Clinic denies the remaining allegations in this paragraph.

22. Answering paragraph 22, Mayo Clinic admits on or about March 19, 2022, Dr. Zehnder submitted a request for accommodations and requested six accommodations included the five listed in paragraph 22. Mayo Clinic denies the remaining allegations in paragraph 22.

23. Answering paragraph 23, Mayo Clinic admits that Dr. Zehnder submitted forms titled Request for Accommodations and Medical Provider Verification of a Disability and three letters from three medical doctors, and Dr. Zehnder's rationale for the requested accommodations. Mayo Clinic denies the remaining allegations of this paragraph.

24. Answering paragraph 24, Mayo Clinic admits that Dr. Zehnder corresponded

generally with several employees, including Kara James, a Disability and Accommodation Resource Specialist, about her requested accommodations. Mayo Clinic denies the remaining allegations of this paragraph.

25. Answering paragraph 25, Mayo Clinic admits Dr. Zehnder indicated in her initial request and corresponding documentation that one or more of her requested accommodations were tied to her need to have approximately 8 hours of sleep. Mayo Clinic denies the remaining allegations in paragraph 25.

26. Answering paragraph 26, Mayo Clinic admits.

27. Answering paragraph 27, Mayo Clinic denies.

28. Answering paragraph 28, Mayo Clinic admits the Office of Wellness & Academic Support issued a letter on June 28, 2022 granting all of Dr. Zehnder's requested accommodations during year 1 of her residency, granting a portion of Dr. Zehnder's requested accommodations in years 2 through 4, and denying other requested accommodations in years 2 through 4. Mayo Clinic avers, however, that letter was not the last communication with Dr. Zehnder about possible accommodations for years 2 through 4 of her residency and that such communications continued with her through December 2022. Mayo Clinic denies any remaining allegations in paragraph 28.

29. Answering paragraph 29, Mayo Clinic denies.

30. Answering paragraph 30, Mayo Clinic admits.

31. Answering paragraph 31, Mayo Clinic admits its counsel communicated with Dr. Zehnder's counsel on January 20, 2023, that communication speaks for itself, and that Dr. Zehnder quotes only a portion of that communication. Mayo Clinic denies the remaining allegations in this paragraph.

32. Answering paragraph 32, Mayo Clinic denies.

33. Answering paragraph 33, Mayo Clinic admits that working night float and on-call is an essential part the residency, that modifications Dr. Zehnder proposed would fundamentally alter the residency, and if granted would create an undue hardship. Mayo Clinic denies the remaining allegations in paragraph 33.


34. Answering paragraph 34, Mayo Clinic denies.

35. Answering paragraph 35, Mayo Clinic denies.

36. Answering paragraph 36, Mayo Clinic admits it has released a press release indicated that the American Association of People with Disabilities has named Mayo Clinic one of the best places to work for people with disabilities and that it scored 100% on the Disability Equality Index. Mayo Clinic denies the remaining allegations in paragraph 36.

37. Answering paragraph 37, upon information and belief, Mayo Clinic admits Dr. Zehnder moved from Virginia after completing her internship to begin a residency. Mayo Clinic lacks knowledge or information sufficient to form a belief about the about the truth of the remaining allegations in this paragraph, and therefore denies the same.

38. Paragraph 38 does not contain a factual allegation directed at Mayo Clinic, and therefore does not require a response. To the extent that a response is required, Mayo Clinic lacks knowledge or information sufficient to form a belief about the about the truth of the remaining allegations in this paragraph, and therefore denies the same.

39. Answering paragraph 39, Mayo Clinic admits.

40. Answering paragraph 40, Mayo Clinic admits.

41. Answering paragraph 41, Mayo Clinic admits.

42. Answering paragraph 42, Mayo Clinic admits that the ACGME has Program Requirements for Graduate Medical Education in Diagnostic Radiology, that those requirements speak for themselves and may change from year to year, that those requirements apply to accredited residency programs, and those requirements outline the requirements, among other things, for a residency's programs educational program and a learning and working environment that emphasizes certain principles.  Mayo Clinic avers that the learning and working environment requirements are intended to provide flexibility within an established framework allowing programs and residents more discretion to structure clinical education in a way that best supports the stated principles of professional development.  As such, Mayo Clinic denies the allegations in paragraph 42.

43. Answering paragraph 43, Mayo Clinic admits that the ACGME has Program

Requirements for Graduate Medical Education in Diagnostic Radiology, that, generally speaking, a goal of any residency is the professional development of a learner from medical school to autonomous clinical practice including the ability to take independent call. Mayo Clinic denies any remaining allegations in paragraph 43.

44. Answering paragraph 44, Mayo Clinic denies.

45. Answering paragraph 45, Mayo Clinic denies.

46. Answering paragraph 46, Mayo Clinic denies.

47. Answering paragraph 47, Mayo Clinic admits that the ACGME regularly updates and revises its Program Requirements for Graduate Medical Education in Diagnostic Radiology, but Dr. Zehnder does not specify which updates or revisions or even the version she cites; therefore Mayo Clinic generally denies the remaining allegations in this paragraph as it is not clear which version setting forth the requirements are being referenced, what constitutes recent, and what updates or revisions to which Dr. Zehnder is referring.

48. Answering paragraph 48, Mayo Clinic admits the quoted language is a portion of the text appearing in the Background and Intent comment appearing in Section IV.B. of the ACGME's Program Requirements for Graduate Medical Education in Diagnostic Radiology for the version effective July 1, 2022. Mayo Clinic denies that the language is part of the actual requirements or that it has been quoted in full.

49. Answering paragraph 49, Mayo Clinic admits that the ACGME's program requirements set forth six areas of competencies for a physician to enter autonomous practice, that those competencies must be integrated into a program's curriculum, that Mayo Clinic's curriculum integrates those six areas of competencies and that its residents including Dr. Zehnder must demonstrate meet those six areas of competencies as described more fully in the program requirements. Mayo Clinic denies the remaining allegations in paragraph 49.

50. Answering paragraph 50, Mayo Clinic admits that the ACGME has Program Requirements for Graduate Medical Education in Diagnostic Radiology, that those

1  requirements speak for themselves and may change from year to year, that those requirements apply to accredited residency programs, and those requirements outline the requirements, among other things, for a residency's programs educational program and a learning and working environment that emphasizes certain principles. Mayo Clinic avers that the learning and working environment requirements are intended to provide flexibility within an established framework allowing programs and residents more discretion to structure clinical education in a way that best supports the stated principles of professional development. As such, Mayo Clinic denies the allegations in paragraph 50.

51. Answering paragraph 51, Mayo Clinic denies.

52. Answering paragraph 52, Mayo Clinic denies.

53. Answering paragraph 53, Mayo Clinic admits the version of ACGME's Program Requirements for Graduate Medical Education in Diagnostic Radiology effective July 1, 2022, includes text in one of Section VI's comments on the Background and Intent that the requirements have been recently revised and Mayo Clinic admits that some of the revisions relate to ensuring a commitment and attention to patient safety and resident and faculty member well-being. Mayo Clinic denies that Dr. Zehnder has accurately quoted the language in this paragraph. As such, Mayo Clinic denies any remaining allegations in paragraph 53.

54. Answering paragraph 54, Mayo Clinic admits the version of ACGME's Program Requirements for Graduate Medical Education in Diagnostic Radiology effective July 1, 2022, includes text in one of Section VI's comments on the Background and Intent stating that "Section VI has now been expanded to include greater attention to patient safety and resident faculty member well-being. These requirements are intended to support programs and residents as they strive for excellence, while also ensuring ethical, humanistic training." Mayo Clinic denies the remaining allegations in paragraph 54.

55. Answering paragraph 55, Mayo Clinic admits the version of ACGME's Program Requirements for Graduate Medical Education in Diagnostic Radiology effective July 1, 2022, includes the quoted text in Section VI.C.1.d), but denies that sole provision

1  defines the entirety of the program requirements.

2      56.    Answering paragraph 56, Mayo Clinic denies.

## COUNT I

### Americans with Disabilities Act – Disparate Impact

    57.    Answering paragraph 57, Mayo Clinic reasserts and incorporates its answers to all preceding paragraphs of this Answer as if fully restated herein.

    58.    Answering paragraph 58, Mayo Clinic admits.

    59.    Answering paragraph 59, Mayo Clinic lacks knowledge and information sufficient to form a belief as to the truth of the allegations, and therefore denies the same.

    60.    Answering paragraph 60, Mayo Clinic denies the allegations in the first sentence of the paragraph. Mayo Clinic admits that some of the reviews following her first rotation included the observations set forth in the bullet points in paragraph 60. Mayo Clinic denies the remaining allegations in this paragraph.

    61.    Answering paragraph 61, Mayo Clinic lacks knowledge and information sufficient to form a belief as to the truth of the allegations, and therefore denies the same.

    62.    Answering paragraph 62, Mayo Clinic admits that in certain cases a disparate impact claim may be asserted under the ADA, that a disparate impact claim may turn on a particular qualification standard, employment test, or other selection criteria, and that a challenged standard, test, or criteria may still be proper if it is job related for the position in question and consistent with business necessity. Mayo Clinic denies the remaining allegations in in paragraph 62.

    63.    Answering paragraph 63, Mayo Clinic admits that in in certain cases a disparate impact claim may be asserted under the ADA, that a disparate impact claim may turn on a particular qualification standard, employment test, or other selection criteria, that intentional discrimination need not be proven in a disparate impact case, and that a challenged standard, test, or criteria may still be proper if it is job related for the position in question and consistent with business necessity. Mayo Clinic denies the remaining allegations in in paragraph 63.

64. Answering paragraph 64, Mayo Clinic denies.

65. Answering paragraph 65, Mayo Clinic lacks knowledge and information sufficient to form a belief as to the truth of the allegations, and therefore denies the same.

66. Answering paragraph 66, Mayo Clinic admits Dr. Zehnder is seeking the relief stated but denies that she is entitled to such relief.

## COUNT II

### Americans with Disabilities Act – Failure to Accommodate

67. Answering paragraph 67, Mayo Clinic reasserts and incorporates its answers to the preceding paragraphs of this Answer as if fully restated herein.

68. Answering paragraph 68, Mayo Clinic lacks knowledge and information sufficient to form a belief as to the truth of the allegations, and therefore denies the same.

69. Answering paragraph 69, Mayo Clinic denies the allegations in the first sentence of the paragraph. Mayo Clinic admits that some of the reviews following Dr. Zehnder's first rotation included the observations set forth in the bullet points in paragraph 69. Mayo Clinic denies the remaining allegations in this paragraph.

70. Answering paragraph 70, Mayo Clinic admits.

71. Answering paragraph 71, Mayo Clinic admits that it denied some of her requested accommodations in June 2022, but Mayo Clinic avers that the letter was not the last communication with Dr. Zehnder about possible accommodations for years 2 through 4 of her residency and that such communications continued with her through December 2022. Mayo Clinic denies any remaining allegations in paragraph 71.

72. Answering paragraph 72, Mayo Clinic admits that the parties continue to engage in the interactive process through the present. Mayo Clinic denies the remaining allegations contained in paragraph 72.

73. Answering paragraph 73, Mayo Clinic denies.

74. Answering paragraph 74, Mayo Clinic denies.

75. Answering paragraph 75, Mayo Clinic denies.

76. Answering paragraph 76, Mayo Clinic denies.

1   77.   Answering paragraph 77, Mayo Clinic denies.

2   78.   Answering paragraph 78, Mayo Clinic admits Dr. Zehnder is seeking the relief stated but denies that she is entitled to such relief.

## COUNT III

### Rehabilitation Act

79.   Answering paragraph 79, Mayo Clinic reasserts and incorporates its answers to the preceding paragraphs of this Answer as if fully restated herein.

80.   Answering paragraph 80, Mayo Clinic admits that under the Rehabilitation Act "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination to discrimination under any program or activity receiving Federal financial assistance." Mayo Clinic denies the remaining allegations in paragraph 80.

81.   Answering paragraph 81, Mayo Clinic lacks knowledge and information sufficient to form a belief as to the truth of the allegations, and therefore denies the same.

82.   Answering paragraph 82, Mayo Clinic admits that it and Mayo Clinic Arizona participate in the Medicare program and that some of it or its affiliated non-profit organizations receive certain grants, but for purposes of this lawsuit Mayo Clinic has not yet determined whether such activity means that a program or activity is receiving Federal financial assistance to determine whether the nondiscrimination provisions of the Rehabilitation Act apply to it. As such, Mayo Clinic denies the remaining allegations in paragraph 82.

83.   Answering paragraph 83, Mayo Clinic denies the allegations in the first sentence of the paragraph. Mayo Clinic admits that some of the reviews following Dr. Zehnder's first rotation included the observations set forth in the bullet points in paragraph 83. Mayo Clinic denies the remaining allegations in this paragraph.

84.   Answering paragraph 84, Mayo Clinic denies.

85.   Answering paragraph 85, Mayo Clinic denies.

4877-5061-9733.3
- 11 -

86. Answering paragraph 86, Mayo Clinic denies.

87. Answering paragraph 87, Mayo Clinic admits Dr. Zehnder is seeking the relief stated but denies that she is entitled to such relief.

## COUNT IV

### Arizona Civil Rights Act

88. Answering paragraph 88, Mayo Clinic reasserts and incorporates its answers to the preceding paragraphs of this Answer as if fully restated herein.

89. Answering paragraph 89, Mayo Clinic lacks knowledge and information sufficient to form a belief as to the truth of the allegations, and therefore denies the same.

90. Answering paragraph 90, Mayo Clinic denies.

91. Answering paragraph 91, Mayo Clinic admits.

92. Answering paragraph 92, Mayo Clinic denies.

93. Answering paragraph 93, Mayo Clinic admits Dr. Zehnder is seeking the relief stated but denies that she is entitled to such relief.

## GENERAL DENIAL

94. Mayo Clinic denies each and every allegation in Dr. Zehnder's Complaint except those allegations which have been specifically and expressly admitted above. Mayo Clinic further denies that Dr. Zehnder is entitled to judgment against it or that she is entitled to an award of damages in any amount, and specifically deny that Dr. Zehnder is entitled to the relief she seeks in the prayer for relief following paragraph 93 of the Complaint.

## DEFENSES AND OTHER AVOIDANCES

Mayo Clinic alleges the following defenses, some of which are affirmative defenses:

1. All employment decisions regarding or affecting Dr. Zehnder were based on legitimate, nondiscriminatory and reasonable business decisions.

2. Legitimate reasons, standing alone, would have induced Mayo Clinic to take the same action, even in the absence of Dr. Zehnder's alleged protected status or activity.

3. Mayo Clinic took reasonable care to prevent discrimination and to accommodate Dr. Zehnder, and to ensure there was no improper conduct related to Dr. Zehnder's alleged disability.

4. Mayo Clinic acted reasonably and in good faith, and did not act willfully, with malice, or reckless indifference.

5. Dr. Zehnder's physical impairments as defined in the Complaint may not be disabilities within the meaning of the applicable laws.

6. Mayo Clinic is not the cause under each applicable law of Dr. Zehnder's alleged harms or damages, if any.

7. Mayo Clinic is not Dr. Zehnder's employer. Rather, Mayo Clinic Arizona is her employer.

8. Dr. Zehnder has not exhausted her administrative remedies necessary to bring claims under the ADA and ACRA.

9. Dr. Zehnder is either unwilling or cannot perform certain required rotations, which are essential functions of the resident position in years two, three, and four of the residency, with or without reasonable accommodations.

10. The accommodations requested by Dr. Zehnder were not reasonable.

11. The accommodations requested by Dr. Zehnder would impose an undue hardship.

12. Mayo Clinic continues to engage in the interactive process with Dr. Zehnder in an attempt to find reasonable accommodations that do not create an undue hardship and Dr. Zehnder has declined reasonable accommodations.

13. Dr. Zehnder's proposed accommodations would require a fundamental alteration in the nature of the residency program.

14. The employment standards, tests, and criteria, if any, that Dr. Zehnder alleges cause a disparate impact are job-related and consistent with business necessity and her performance cannot be accomplished by reasonable accommodation.

15. According to Dr. Zehnder, employing her with the accommodations Mayo Clinic offered for certain rotations in years two, three, and four of the residency may pose a direct threat to her health and safety or the health and safety of patients and others.

16. At the time of filing her Complaint, up to and through the filing of the Answer and still after that, Dr. Zehnder has not suffered any adverse employment action.

17. If Dr. Zehnder has suffered damages, those damages are limited by the amount that Dr. Zehnder has avoided through reasonable mitigation efforts, and/or by the amount that Dr. Zehnder should have avoided through reasonable mitigation efforts

18. Dr. Zehnder's claims or damages may be barred in whole or in part by the doctrines of after-acquired evidence, estoppel, and unclean hands.

19. Dr. Zehnder has unclean hands in that she informed Mayo Clinic that she was able to carry out the responsibilities and requirements of the specific training program to which she was applying with or without reasonable accommodations.

20. Mayo Clinic has acted reasonably and in good faith, without malice or intent to injure Dr. Zehnder, and with reasonable grounds to believe that its actions and omissions were not discriminatory and were not in violation of any applicable laws or regulations such that an award of punitive damages would be improper.

21. Punitive damages are not available for all claims, and to the extent they are available under the ADA, they are subject to statutory caps based on the number of employees.

22. With respect to some of her claims, Dr. Zehnder's allegations fail to state a claim upon which relief can be granted.

23. Mayo Clinic reserves the right to add additional denials, admissions, and/or affirmative defenses, pursuant to Rule 8, Federal Rules of Civil Procedure.

## **DEMAND FOR JURY TRIAL**

24. Without conceding the propriety of any claim or that the claims pled are not susceptible to a dispositive motion, Mayo Clinic hereby demands a jury on all issues that may be heard and resolved by a jury.

4877-5061-9733.3

## MAYO CLINIC'S PRAYER FOR RELIEF

WHEREFORE, having fully answered Dr. Zehnder's Complaint, Mayo Clinic prays that:

    A.    Dr. Zehnder's Complaint be dismissed and that Dr. Zehnder takes nothing thereby;

    B.    Mayo Clinic be awarded its costs, and if facts develop that warrant it, an award of attorneys' fees on those claims where it is permitted by law; and

    B.    For such other and further relief that the Court deems just and proper.

DATED March 24, 2023

SNELL & WILMER L.L.P.

By: *s/ John F. Lomax*
    John F. Lomax
    Samantha E. Cote
    One East Washington Street
    Suite 2700
    Phoenix, Arizona 85004-2556
    Attorneys for Mayo Clinic

4877-5061-9733.3